# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARGARET ANN HAYESLIP,

      Plaintiff,

vs.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:24-cv-01717

## OPINION

Ms. Hayselip has a number of medical conditions, including crippling anxiety and OCD.  It is so bad that she almost never leaves the home, and when she does, she often has severe panic attacks.  Her medical providers and various medical experts all agree.  But the ALJ here didn't.  He largely rejected the ultimate conclusions of the treatment providers and medical experts, and found that Ms. Hayselip wasn't disabled and could work as an office clerk, mail clerk, or router—all light-work positions, but nonetheless requiring obvious interpersonal interactions outside the home.

On careful review, the Court respectfully disagrees with the ALJ.  He was certainly free to reach his own conclusions about the medical records, so long as those conclusions were "supportable" and "consistent" with the medical evidence.  They were not.  So the Court will remand.

## BACKGROUND

### I.    Procedural Background.

Margaret Ann Hayeslip seeks judicial review of the Social Security Administration's decision denying her application for Supplemental Security Income under Title XVI of the Social Security Act.  Ms. Hayeslip applied for social security

benefits in May 2021, claiming that she is disabled due to ADHD, OCD, anxiety, depression, and ODD/passive aggressive personality disorder. ECF 4-2 at 20. After a hearing before an Administrative Law Judge (ALJ), her claim was denied. *Id.* at 18. Ms. Hayeslip appealed to the Social Security Administration's Appeals Council, which denied her request for review. ECF 4-14 at 19. She then appealed to this Court. At that time, the case was before Judge Bloch, and Ms. Hayeslip and the Commissioner agreed to a joint stipulation to remand the case, as both parties agreed that the ALJ didn't sufficiently assess the medical evidence. ECF 4-13; *Hayeslip v. O'Malley*, No. 2:23-cv-00931 (W.D. Pa. Jan. 18, 2024) (Bloch, J.).

The Appeals Council then issued a concomitant order of remand in November 2023 and directed the ALJ—who presided over both her initial hearing and her hearing on appeal—to: (1) give further consideration to medical source opinions and prior administrative medical findings; and (2) give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations. ECF 4-14. at 7–8. The ALJ held a hearing, and again denied Ms. Hayeslip's claim in October 2024. ECF 4-13 at 1–4. Ms. Hayeslip's appeal of the Commissioner's second denial of Supplemental Security Income is now before the Court. ECF 3; ECF 8.

## II.     ALJ's Decision.

After a hearing on Ms. Hayeslip's application for Supplemental Social Security Income, the ALJ made the following findings under the five-step sequential analysis:

1. "The claimant has not engaged in substantial gainful activity since May 28, 2021, the application date (20 CFR 416.971 et seq.)." [**STEP 1**].

2. "The claimant has the following severe impairments: fibromyalgia; major depressive disorder; generalized anxiety disorder; agoraphobia; obsessive-compulsive disorder; borderline personality disorder; and ADHD (20 CFR 416.920(c))." [**STEP 2**].

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." [**STEP 3**].

4. "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except for the following:
   - she can occasionally climb ramps and stairs but never ladders, ropes, and scaffolds;
   - she can occasionally balance, stoop, kneel, crouch, and crawl;
   - she must avoid concentrated exposure to extremes of light (such as direct sunlight and strobes), loud noise (such as heavy traffic and sirens), heat, cold, vibration, wetness, and all hazards such as inherently dangerous moving machinery and unprotected heights;
   - she is limited to simple work, carrying out simple instructions and using judgment;
   - she can make simple work-related decisions;
   - any work duties and any changes must be explained to her, written and/or demonstrated and can be learned in 30 days or less;
   - work must not have strict production rates such as assembly line work or hourly time quotas; and
   - she is limited to occasional interaction with others." [**Residual Functional Capacity**].

5. "The claimant has no past relevant work (20 CFR 416.965)." [**STEP 4**].

6. "The claimant was born on April 12, 1988 and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963)."

7. "The claimant has at least a high school education" (20 CFR 416.964).

8. "Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968)."

9. "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

- 3 -

national economy that the claimant can perform (20 CFR 416.969 and 416.969a)." [**STEP 5**].

ECF 4-13 at 7–20.

In reaching his findings on Ms. Hayeslip's residual functional capacity, the ALJ considered, among other parts of the record, the opinions of three mental health professionals: Chantal Deines, Psy.D., a consultative psychological examiner; Robert King, M.A., a consultative psychological examiner; and Terrie L. Means, Licensed Clinical Social Worker, a licensed clinical social worker who served as Ms. Hayeslip's OCD provider, proscribed medication to Ms. Hayeslip, and recorded an evaluation of her condition every 1–3 months. *Id.*

First, the ALJ found the opinion evidence offered by Dr. Deines "unpersuasive." ECF 4-13. Dr. Deines examined Ms. Hayeslip on September 9, 2021, and opined that Ms. Hayeslip's thought processes were coherent, goal directed, and very articulate. ECF 4-7 at 112. Ms. Hayeslip was "very specific in her speech and choice of words and tried to describe everything in great detail." *Id.* Dr. Deines opined that Ms. Hayeslip's "anxiety about most topics did seem almost to rise to the level of paranoia" as "she seemed constantly on alert for something that is going to happen." *Id.* There was, though, "no clear evidence of hallucinations or delusions." *Id.* Dr. Deines reported that she seemed anxious and tense, but Ms. Hayeslip noted being "anxious but hopeful." *Id.* Ms. Hayeslip could complete multiplication, addition, and simplified division; but she exhibited significant effort and anxiety when presented with more difficult problems, such as serial 7s from 100. *Id.* at 112. Dr. Deines opined that, given Ms. Hayeslip's anxiety, she may have issues with concentration. *Id.* at 112–13.

Dr. Deines also reported that Ms. Hayeslip has challenges with memory and recall, and her "anxiety is likely to interfere" with her ability to perform related tasks. *Id.* at 113. Dr. Deines noted, though, that Ms. Hayeslip is in at least the average

range of intellectual ability.  *Id.*  Dr. Deines described her insight as "fair" and her judgment as "fair to good," while suspecting that her judgment would be impacted by her anxiety.  *Id.*

Second, the ALJ found the opinion evidence of Mr. King "mostly unpersuasive." ECF 4-13 at 16.  As to current functioning, Ms. Hayeslip reported to Mr. King that she had some homicidal ideation but no plans to harm anyone.  *Id.* at 37.  She described her anxiety as a "serious problem."  *Id.*  She reported some contamination fears that were exacerbated by the pandemic.  Mr. King found that she has compulsive thoughts that she deals with through handwashing and is "given to picking, especially if her skin breaks out, or she might pick at her eyelashes."  *Id.*  She reported difficulty with leaving home and being out in the community.  She described her monthly panic attacks, which can involve chest tightening, difficulty breathing, and curling up and dropping to the ground.  The panic attacks are triggered by anxiety, fear, and going out into the community.  Mr. King noted that she did not report anything that sounded like a manic episode.  She denied having any visual hallucinations.  Conversely, she reported sound hallucinations, such as scratching noises in the walls, people whispering outside her window, or someone knocking at the door where there were no such noises.  *Id.*

Mr. King found her thought processes to be coherent and goal directed with no overwhelming evidence of hallucinations, delusions, or paranoia.  ECF 4-9 at 38.  He opined her affect as "anxious and tense," sensorium as "clear," and orientation "good for person, place, and time."  *Id.*  Her attention and concentration "seemed fair."  *Id.* She could perform basic counting and multiplication, and mostly performed the serial 7s correctly.  *Id.* at 38–39.

Third, the ALJ found the opinion evidence of Ms. Means "less persuasive as an assessment of the impact of [Ms. Hayeslip's] anxiety and impairments on her mental limitations."  ECF 4-13 at 18.  Ms. Means treated Ms. Hayeslip approximately two

times per week for OCD during the relevant time period.  ECFs 4-7, 4-11, 4-12, 4-13, & 4-19.  The record contains extensive treatment records (*e.g.*, progress notes) recounting Ms. Hayeslip's appointments with Ms. Means.  The progress notes and after-visit summaries detail the status of Ms. Hayeslip's OCD, anxiety, major depressive disorder, borderline personality disorder, and ADHD, and related treatment plans.  *See, e.g.*, ECFs 4-7, 4-11, 4-12, 4-13, & 4-19.

Ms. Means also completed a HA-1152 Medical Statement of Ability to do Work-Related Activities Form in which she opined that Ms. Hayeslip had moderate limitation with carrying out simple instructions, and marked limitation with understanding and remembering simple and complex instructions, carrying out complex instructions, and making judgments or complex work-related decisions.  ECF 4-20 at 32.  She supported this opinion by noting that Ms. Hayeslip cannot follow instructions when she is anxious due to her OCD rituals and racing thoughts, that her ADHD and OCD symptoms increase when her anxiety is high, and that her diagnoses cause extreme fatigue.  *Id.*

Ms. Means further opined that Ms. Hayeslip had moderate limitation with interacting with supervisors, coworkers, and the public, and marked limitation responding appropriately to usual work situations and changes in a routine work setting.  She noted that this is, in part, due to Ms. Hayeslip's OCD rituals involving safety, trust, and contamination fears.  She stated that Ms. Hayeslip has difficulty with transitions and change without adequate preparation and time allotted to complete tasks on demand when anxious.  *Id.* at 33.

## DISCUSSSION & ANALYSIS

### I.    Legal Framework.

Under the Social Security Act, an individual is eligible for Supplemental Security Income if (i) she is aged, blind, or disabled and (ii) her countable income and resources fall below certain statutory limits.  42 U.S.C. § 1382(a); *Kelley v. Comm'r*

*of Soc. Sec.*, 566 F.3d 347, 349 (3d Cir. 2009).  Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  An individual will be found disabled only if her physical or mental impairment is so severe that she cannot engage in any kind of substantial gainful work in the national economy, regardless of whether such work exists in the immediate area in which she lives, whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. §1382c(a)(3)(B).

When reviewing a claim and determining whether the individual is disabled to the point where she can't engage in any gainful work, the ALJ must use a five-step sequential analysis to evaluate whether a claimant has met the requirements for disability.[1]  Part of that five-step analysis is the determination of the claimant's residual functional capacity, which is the key issue here.  Residual functional capacity is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

---

[1] The five-step process requires the ALJ to assess: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 CFR, Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 CFR §§ 404.1520(a)(4), 416.920(a)(4); see *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at Step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, she is able to perform substantial gainful activity in jobs available in the national economy.  *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

Ms. Hayeslip argues that the ALJ failed to adequately consider the medical opinion evidence of Dr. Deines, Mr. King, and Ms. Means, and therefore erred in his determination of her residual functional capacity. ECF 9. The Commissioner contends that substantial evidence supports the ALJ's residual functional capacity determination. ECF 13. The Court finds that substantial evidence does not support the ALJ's residual functional capacity determination because the ALJ erred in his evaluation of Dr. Deines's, Mr. King's, and Ms. Mean's medical opinion evidence.

## II.  Standard of Review.

Judicial review of the Commissioner's final decision is provided by federal law. 42 U.S.C. § 405(g). The Court has plenary review of all legal issues and will "review the ALJ's findings of fact to determine whether they are supported by substantial evidence." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). "The substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence. To determine whether a finding is supported by substantial evidence, we must review the record as a whole." *Id.*

Substantial evidence is more than a "mere scintilla." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). That is, the ALJ's decision must be supported by "such relevant evidence as a reasonable mind might accept as adequate." *Id.* The Court is not permitted to weigh the evidence or substitute its own conclusions for those of the factfinder. *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992). The Court can't affirm a determination by substituting its own proper basis—even if it might have reached a different conclusion. *Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947).

Under 20 CFR § 404.1520c, the ALJ must consider the persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of the treatment

relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical findings.  20 CFR § 404.1520c(c).

In reaching his conclusions as to medical opinion evidence, the ALJ must discuss the two most important steps: supportability and consistency.  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024); 20 CFR § 404.1520c(b)(2).

Under the SSA regulations, supportability is a measure of the relevance of "objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion(s)."  20 CFR §§ 404.1520c(c)(1), 416.920c(c)(1).  Consistency measures the agreeableness of medical opinions with "evidence from other medical sources and nonmedical sources in the claim."  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

While an ALJ must weigh supportability and consistency when evaluating medical opinion evidence, "to satisfy this requirement, a judge need not reiterate the magic words 'support' and 'consistent' for each doctor."  *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th at 639.  The ALJ may "weave" this analysis throughout his decision.  *Id.*  ALJs are not beholden to any particular language or format.  *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).  An ALJ "may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected."  *Kent v. Schweiker*, 710 F.2d 110, 115 n. 5 (3d Cir. 1983) (cleaned up).

**III.    Dr. Deines's and Mr. King's medical opinion evidence is consistent across their mental health evaluation reports and their completed HA-1152 forms.**

An ALJ is required to consider the consistency of medical opinion evidence across the longitudinal record.  As noted above, consistency measures the agreeableness of medical opinions with "evidence from other medical sources and nonmedical sources in the claim."  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).  So the ALJ

must compare the medical opinion evidence with evidence across the entire record, including different types of evidence presented by the same examiner or treating physician.

Here, the ALJ found that Dr. Deines's and Mr. King's written mental status evaluations are inconsistent with what they reported on Medical Statements of Ability to do Work-Related Activities (*i.e.*, the HA-1152 form that examiners and treating physicians fill out as required by the Commissioner). That is, the ALJ found that what Dr. Deines and Mr. King observed and reported in narrative form on the written mental evaluation didn't square with their evaluations on the HA-1152 forms. ECF 4-13 at 12. Not so. The Court finds that what Dr. Deines and Mr. King observed and recounted in their narrative mental status evaluations *supports* what they reported on the HA-1152 forms.

To begin with, Dr. Deines reported on the HA-1152 form that Ms. Hayeslip has marked limitations in her ability to carry out simple and complex instructions, interact appropriately with members of the public, supervisors, and coworkers, and respond appropriately to usual work situations and changes in a routine work setting. On the mental status evaluation, Dr. Deines described Ms. Hayeslip as articulate, communicative, and able to interact with friends online and family in person.[2] ECF

---

[2] The ALJ opined that:

> [Ms. Hayeslip] is less limited considering mental health records documenting neat appearance; cooperativeness; normal eye contact, motor activity, speech, and thought processes; no impairment relative to memory or attention; and intact judgment and insight. (See e.g., 4F, 8F; 14F; 15F). [Ms. Hayeslip] is less limited considering [her] numerous statements regarding improvement of her mental health with psychiatric medications as well as subsequent control of fibromyalgia symptoms. (2F/7, 9, 11, 15; 4F/11, 14, 20, 24, 28, 30; 8F/7, 9, 11, 13; 12F/3; 13F/14; 14F/17, 19, 43; 15F/18, 22, 48, 52, 75, 77, 92; 16F/3-6, 13, 20).

4-13 at 12.  The ALJ found an inconsistency here—*i.e.*, if Ms. Hayeslip is articulate and can communicate with friends online, then she cannot be markedly limited in her ability to interact with members of the public.  But interacting with friends online and family in person is not equivalent to "responding appropriately to supervision, co-workers and usual work situations"—which are a sign of non-severe impairments preventing a person to do basic work activities.  20 CFR § 416.922.  So while the ALJ *explained* his reasoning by noting inconsistencies, the Court finds that he nevertheless *erred* in his reasoning, because Dr. Deines's marked limitation findings are consistent with her mental status evaluation.  *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) ("When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason") (cleaned up).

Similarly, the ALJ erred in concluding that Mr. King's HA-1152 form and mental status evaluation are inconsistent.  The ALJ noted that Mr. King's reporting marked limitations in her ability to make judgments on complex work-related decisions is "not supported by [Ms. Hayeslip's] examination," because Mr. King report in his mental status evaluation that she has "some marginal memory deficit but average cognitive functioning."  *Id.* at 16.  Mr. King reported that Ms. Hayeslip understands that food should be kept cold and an idiom about glass houses.  ECF 4-8 at 39.  These examples, though, do not amount to judgments on complex work-related decisions.

The ALJ also found Mr. King's mental status evaluation and other parts of the record inconsistent with his reporting on the HA-1152 form, where he reported that Ms. Hayeslip's had marked limitations in the ability to interact appropriately with the public and supervisors, and extreme limitation in the ability to interact

---

ECF 4-13 at 15–16.

appropriately with coworkers and respond appropriately to usual work situations and to changes in a routine work setting. ECF 4-13 at 16. Yet Ms. Hayeslip reported to Mr. King that she has difficulty with leaving home and being out in the community, as well as monthly panic attacks—triggered by anxiety, fear, and going out into the community—involving chest tightening, difficulty breathing, and curling up and dropping to the ground. *Id.* The panic attacks can last for 30 to 60 minutes. *Id.* So even if Ms. Hayeslip can shop in stores occasionally, her panic attack episodes render a marked limitation in her ability to interact appropriately with the public and supervisors. Mr. King's findings on the HA-1152 form are consistent with his findings on the mental status evaluation.

## IV. Ms. Means's medical opinion evidence is consistent with Dr. Deines's and Mr. King's medical opinion evidence.

The ALJ weighed Ms. Means's opinion against another medical practitioner— Tara Burkholder, a certified registered nurse practitioner who Ms. Hayeslip also saw frequently at the same treatment facility—and found Ms. Means's opinion evidence less persuasive than that offered by Ms. Burkholder. According to the longitudinal record, Ms. Hayeslip saw Ms. Means, a licensed clinical social worker, twice a week for treatment for her OCD during the relevant time period (*i.e.*, 2022 through 2024). *See* ECFs 4-7, 4-11, 4-12, 4-13, & 4-19. Ms. Means appears to have been Ms. Hayeslip's regular provided for OCD treatment. Ms. Hayeslip saw Ms. Burkholder less often. The ALJ reasoned that Ms. Burkholder's opinions were more consistent with the "totality of the evidence." ECF 4-13 at 18. The Court determines this consistency finding to be unsupported.

The totality of Ms. Means's reported observations show that Ms. Hayeslip cannot interact with the public in normal work settings. For example, Ms. Means reported on the HA-1152 form that Ms. Hayeslip had moderate limitations with following simple instructions and marked limitations with understanding,

remembering, and carrying out complex instructions, and making judgments or complex work-related decisions. She reported moderate limitations in interacting with supervisors, coworkers, and the public, and marked limitations responding appropriately to usual work situations and changes in a routine work setting. ECF 4-20. The HA-1152 form requires those completing it to identify the factors that informed their multiple selection checkbox answers.

Ms. Means provided thorough explanations when given the opportunity, and her written answers are reinforced by her patient visits with Ms. Hayeslip. For example, on the HA-1152 form, she noted that Ms. Hayeslip's "OCD is chronic and debilitating with symptoms waxing and waning. [Ms. Hayeslip] has other mitigating medical factors and entail health [diagnoses] which worsen anxiety and increase OCD symptoms." ECF 4-20 at 32–34. This evaluation is consistent with the progress notes summarizing Ms. Hayeslip's visits with Ms. Means where Ms. Hayeslip reported debilitating conditions due to her OCD. ECF 4-19 at 67, 111. Ms. Hayeslip also reported increasing OCD symptoms, which confirms Ms. Mean's note that Ms. Hayeslip's OCD symptoms wax and wane. *Id.* at 89.

In contrast, Ms. Burkholder largely only reported her findings via the check-box HA-1152 form as opposed to providing thorough explanations when given the opportunity, like Ms. Means did. ALJs should afford check-box forms—absent narrative explanations adding color to the check-boxes—less weight. *See, e.g.*, *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir.1993) (declaring that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"); *Zonak v. Comm'r of Soc. Sec.*, 290 F. App'x 493, 496 (3d Cir. 2008) (giving less weight to physician medical opinion evidence wherein physician only completed a check-box form; "the opinion at issue was provided on a check-box form and no reasons were given in support of Dr. Kumar's conclusion that Zonak was unable to work."). This is such a case where the check-box form is extremely weak. On the

form, it's true that Ms. Burkholder reported that Ms. Hayeslip had no limitations with understanding, remembering, and carrying out complex instructions, and making judgments or complex work-related decisions. She reported moderate limitation in her ability to interact with supervisors, coworkers, and the public, and to respond appropriately to usual work situations and to changes in work routines. *Id.* The HA-1152 form then states, "see office notes."

The office notes—the better evidence—reflect an entirely different picture. Considering Ms. Burkholder's office notes (*i.e.*, visit summaries), the Court finds that Ms. Burkholder observed the same marked and extreme limitations as Ms. Means. For example, she reported that Ms. Hayeslip experienced what could be hallucinations, ECF 4-7 at 85, and has anxiety related to OCD that "is still crazy," ECF 4-7 at 91. The Court therefore finds that Ms. Burkholder's progress notes are actually consistent with Ms. Means's HA-1152 form and progress notes; in other words, Ms. Burkholder reporting less limitations on her HA-1152 form cannot carry the day when weighed against her progress notes and the totality of the record.

In sum, the ALJ's review of the medical evidence is neither consistent nor supported by the records themselves. Substantial evidence does not support the ALJ's decision in this case, and the case must be remanded.

## CONCLUSION

For the foregoing reasons, the Court remands to the Commissioner for further proceedings, consistent with this opinion. The Clerk of Court shall **CLOSE** this case.

DATED this 16th day of April, 2026.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

- 14 -